Berry v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-069-CR

     MARION BERRY,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 278th District Court
Madison County, Texas
Trial Court #8799
                                                                                                    

O P I N I O N
                                                                                                    

      Marion Berry was convicted by a jury of possession of a deadly weapon in a penal institution,
for which he was assessed 12½ years in prison. Tex. Penal Code Ann. § 1.07(a)(11)(A), (B)
(Vernon 1974) & § 46.11(a)(2) (Vernon 1989). He appeals on a single point alleging that the
evidence was insufficient to show that the instrument possessed was a deadly weapon. We will
overrule the point and affirm the judgment. 
      Berry is an inmate at the Ferguson Unit of the Texas Department of Criminal Justice (TDCJ). 
Charles Barrington, an employee with the TDCJ, testified that he heard a scraping noise of metal
rubbing on concrete. He determined that the noise was coming from Berry's cell. As he
approached the cell, he saw Berry bent over, rubbing something on the floor. When Barrington
confronted him, Berry jumped up and hid the object behind his back. After Barrington ordered
him to strip to be searched, Berry turned over the object—a five-inch-long metal bolt which had
been sharpened on one end and wrapped with duct tape on the other end. Barrington identified
the object as a "shank," which he characterized as "a deadly weapon in a penal institution."
      Barrington testified that: prisoners are not allowed to work in their cells; there is no
legitimate function for the shank; it is designed to do deadly harm; it is capable of causing serious
bodily injury or death; the duct tape allowed for a better grip; it is contraband; and he had seen
inmates stabbed with similar shanks. Three other witnesses testified that the object was a shank,
that it was capable of causing serious bodily injury or death, that they had seen stabbings with
similar objects, and that the object had no legitimate function.
      Berry's sole point is that the evidence is insufficient to prove that the instrument possessed
was a deadly weapon. Section 1.07(a)(11) of the Penal Code defines a deadly weapon as:
(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury; or
(B) anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury.
Tex. Penal Code Ann. § 1.07(a)(11)(A), (B). Berry was indicted for possession of a deadly
weapon, "to wit: a sharp metal object, that in the manner of its use and intended use was capable
of causing death and serious bodily injury." Thus, he was indicted under subsection (B) of section
1.07(a)(11). The court's charge, however, authorized the jury to find that the shank was a deadly
weapon under either subsection (A) or (B). Berry did not object to the charge and has no point
alleging error in the charge.
      The standard of review for sufficiency challenges is whether, after viewing the evidence in
the light most favorable to the verdict, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99
S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 156-57 (Tex.
Crim. App. 1991). Under the Jackson standard, we do not position ourselves as a thirteenth juror
in assessing the evidence; rather, we position ourselves as a final, due-process safeguard ensuring
only the rationality of the factfinder. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988). We do not make our own myopic determination of guilt from reading the cold
record. See id. We do not disregard, realign, or weigh evidence. See id. We have only the
discretion to determine if any rational trier of fact could have found, based on the evidence
admitted at trial, the essential elements of the offense beyond a reasonable doubt. See Rodriguez
v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991).
      The Penal Code defines two types of deadly weapons. Tex. Penal Code Ann. §
1.07(a)(11)(A), (B). The first part of the definition refers to weapons that are deadly by
design—the type of weapons that "the force of inertia has impelled us to persist in calling them
`deadly weapons per se.'" Thomas v. State, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991). 
Thus, an object may be "deadly by design" if it is either "a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious bodily injury." Id. at
619-20; Tex. Penal Code Ann. § 1.07(a)(11)(A). The second part of the definition refers to
weapons that are deadly by usage, both actual and intended. Tex. Penal Code Ann. §
1.07(a)(11)(B).
      Under subsection (A), the evidence is sufficient if it shows the weapon to be deadly by design. 
Id. § 1.07(a)(11)(A); Thomas, 821 S.W.2d at 620. Barrington testified that the shank was
designed to do harm to another person, that the weapon was capable of causing death, and that
there was no legitimate function for the weapon. The remaining witnesses also testified that the
shank was capable of causing death and had no legitimate purpose. If the evidence is sufficient
to establish that the object was "manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury," no other proof is required. Id. It is not necessary that the State
prove that the object was really capable of causing death, either in the manner of its actual use or
in the manner of its intended use. Id. Whether an object is a deadly weapon by design depends
upon the evidence. Id. We believe that, viewing the evidence in the light most favorable to the
verdict, any rational trier of fact could have found beyond a reasonable doubt that the shank
confiscated from Berry was deadly by design—his design. See Jackson, 443 U.S. at 318-19, 99
S.Ct. at 2788-89; Geesa, 820 S.W.2d at 156-57.
      In the alternative, the definition in subsection (B) requires proof that the weapon was "in the
manner of its use or intended use capable of causing death or serious bodily injury." Tex. Penal
Code Ann. § 1.07(a)(11)(B). Berry argues that there was no evidence that he intended to use the
object to cause death or serious bodily injury. Shanks are homemade stabbing devices common
to penal institutions. As Chief Justice Brown aptly stated: "It cannot be seriously asserted that
inmates are making these shanks to clean their fingernails or to make wood carvings to send home
for the holidays. These weapons have only one purpose: the infliction of serious bodily injury
and/or death." Thomas v. State, 801 S.W.2d 540, 543 (Tex. App.—Houston [14th Dist.] 1990)
(dissenting opinion), rev'd, 821 S.W.2d 616 (Tex. Crim. App. 1991). The witnesses testified that
shanks are used by inmates to kill or seriously wound people; that the weapon possessed by Berry
was capable of causing serious bodily injury or death; and that there was no legitimate function
for the confiscated weapon. The Legislature has made possession of a deadly weapon in a penal
institution a crime. Tex. Penal Code Ann. art. 46.11. The jury, as a rational trier of fact, was
entitled to believe that Berry's only possible reason for possession of the shank was his intention
to use it to cause death or serious bodily injury. See Jackson, 443 U.S. at 318-19, 99 S.Ct. at
2788-89; Geesa, 820 S.W.2d at 156-57.
      We believe that a rational trier of fact could have found that the shank possessed by Berry was
both a deadly weapon by its design and by its intended use. See id.; Tex. Penal Code Ann. §
1.07(a)(11)(A),(B). We overrule the point and affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed July 8, 1992
Publish