NO. 07-04-0390-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 13, 2006

_____


JEFFREY GRIMES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 3RD DISTRICT COURT OF ANDERSON COUNTY;

NO. 26796; HONORABLE PAM FLETCHER, JUDGE

_____

Before REAVIS and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, appellant Jeffrey Grimes was convicted by a jury of aggravated sexual assault of a child, enhanced, and punishment was assessed at 50 years confinement. Presenting two issues, appellant maintains the evidence is legally and factually insufficient to support his conviction. We affirm.

When the victim, D.A., was nine years old, she confided in her older sister that appellant, her stepfather, had sexually abused her. The sister told their mother, who immediately took D.A. to a family physician. Following an examination, the doctor concluded there was evidence of digital penetration and suggested that Child Protective Services be contacted.

After D.A.'s mother contacted CPS, she and her three children went to stay with friends and later moved into a shelter. D.A. was given a sexual assault exam which revealed with medical certainty that she had suffered penetration over a period of time. An initial interview was conducted by the director at the Crisis Center, and D.A. had numerous sessions with one of the center's counselors. She also was treated by a psychologist.

Several months after the allegations were made and an investigation had taken place, D.A. recanted explaining she had lied to avoid doing chores and had hoped the accusations would only result in a temporary separation from appellant. She claimed she was lazy and tired of her mother and stepfather fighting. She was unaware that any legal action would be taken.

Although appellant couches his complaints in terms of sufficiency of the evidence, by his arguments and authorities, he challenges the admissibility of D.A.'s outcry statement when the State knew she had recanted the accusations. He also challenges admission of portions of a videotaped interview of D.A.'s prior inconsistent statements. He contends

2

D.A.'s prior inconsistent statements are not evidence of guilt and concludes that following her impeachment, the evidence was insufficient to support the conviction. We disagree.

Article 38.072 of the Texas Code of Criminal Procedure provides that a child's outcry statement is admissible as an exception to the hearsay rule if the requirements of the statute have been met. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). In other words, hearsay admitted pursuant to an exception is considered substantive evidence with some probative value. *See* Rodriguez v. State 819 S.W.2d 871, 873 (Tex.Cr.App. 1991). *See generally* Poindexter v. State, 153 S.W.3d 402, 409 n.23 (Tex.Cr.App. 2005) (quoting a law review article that the "best argument in favor of the probative value of hearsay lies in the many exceptions to its exclusion.") [Citations omitted].

A witness's prior inconsistent statement is admissible only for purposes of impeachment unless it falls within a hearsay exception. Tex. R. Evid. 613(a). *See* Miranda v. State, 813 S.W.2d 724, 735 (Tex.App.–San Antonio 1991, pet ref'd). Appellant suggests that because the State was aware that D.A. recanted, it impeached her as a subterfuge for getting her prior inconsistent statements before the jury. *See* Ramirez v. State, 987 S.W.2d 938, 944 (Tex.App.–Austin 1999, no pet.).

After a hearing outside the jury's presence, the trial court ruled that D.A.'s mother would be permitted to testify as the outcry witness regarding her and her daughter's initial conversation about the abuse. She testified that during her initial conversation with D.A., she asked specific questions about the allegations. D.A. responded that appellant pulled

3

her panties to the side and touched and rubbed her "down there." Her mother immediately suspected molestation and had D.A. examined by a family physician. He concluded there was evidence of penetration and recommended CPS be contacted. She reported the incident and also arranged for a sexual assault exam at the hospital.

When D.A. testified, she admitted lying about being sexually abused by appellant. She rationalized her conduct as an excuse to avoid chores and did not believe her accusations would result in appellant being arrested. According to her testimony, after her mother showed her a newspaper article that appellant had been indicted, she cried and recanted. She did not like living in a shelter and missed her home and appellant. Her siblings were also unhappy with their living arrangements. When questioned about the abuse, D.A. denied statements she had made to the director at the Crisis Center during the initial forensic interview and equivocated on many answers.

The State asked for a recess and moved to show a videotape of the forensic interview to illustrate D.A.'s prior inconsistent statements. After entertaining numerous objections by defense counsel, the trial court ruled that any statements denied by D.A. could be impeached by inconsistent statements made on the videotape. Otherwise, the trial court sustained defense counsel's objections and gave the jury a limiting instruction that the videotape was for impeachment only and could not be used as proof of the elements of the offense.

D.A.'s credibility was impeached at trial. Appellant maintains that D.A.'s prior inconsistent and unsworn statements were the only evidence supporting the accusations and without them, his conviction cannot stand. We disagree.

Appellant was indicted for intentionally or knowingly causing digital penetration of D.A.'s sexual organ. *See* Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon 2003). When sufficiency of the evidence is challenged, we must first determine whether legally sufficient evidence exists that would show beyond a reasonable doubt that the defendant committed each element of the offense. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). In so doing, we examine the verdict, after viewing the evidence in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Burden v. State, 55 S.W.3d 608, 612-13 (Tex.Cr.App. 2001). This standard is the same in both direct and circumstantial evidence cases. *Burden*, 55 S.W.3d at 612-13. Substantive evidence with some probative value, even if erroneously admitted, is, by itself, sufficient to support the jury's verdict. *Rodriquez*, 819 S.W.2d at 873-74.

After conducting a legal sufficiency review under *Jackson,* we must determine, after considering all the evidence in a neutral light, whether the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Cr.App. 2004). It is the exclusive province of the jury to determine the credibility of

5

the witnesses and the weight to be given their testimony, and unless the record clearly demonstrates a different result is appropriate, we must defer to the jury's determination. *Johnson*, 23 S.W.3d at 8.

D.A.'s mother testified that at first she believed her daughter had been molested by appellant. According to the outcry statement, appellant pulled D.A.'s panties to the side and touched and rubbed her private parts. Evidence of digital penetration and other details, however, was not allowed as part of the original outcry statement. Thus, we must look to other evidence to support appellant's conviction for aggravated sexual assault.

The family physician testified that D.A. told him appellant had inserted his fingers into her vagina. He determined that D.A.'s hymen was open about a centimeter, which was unusual for someone her age. The nurse who performed the sexual assault exam also testified that the condition of D.A.'s hymen was consistent with her allegations. There was medical certainty of digital penetration over a period of time. No objections were made to the testimony of either witness; however, an exception to the hearsay rule exists for medical diagnosis or treatment. *See* Tex. R. Evid. 803(4).

D.A.'s mother testified that, although she loved her daughter, she knew she told lies. She also testified that at an early age she discovered D.A. masturbating and believed that caused the damage to her hymen. The nurse, however, testified the damage could not have been caused by masturbating, bicycling, or a fall.

6

A counselor at the Crisis Center testified that according to his sexual inventory and checklist for assessment, he did not suspect D.A. concocted the accusations. The director at the Crisis Center testified that after D.A. recanted, she interviewed her again and found her demeanor to be tense and her responses to be "monotone and robotic."

A psychologist, who was not allowed to offer an opinion on this particular case, testified on motives for recanting. He explained that a child has a need to survive regardless of the home environment. The credibility of an accusation increases when spontaneous corrections are made during an interview rather than parroting or when sexual details are given that are not age appropriate. Additionally, a jury can choose to disbelieve recantation. *See* Chambers v. State, 805 S.W.2d 459, 461 (Tex.Cr.App. 1991) (en banc).

Regardless of D.A.'s impeachment, there is sufficient evidence to support appellant's conviction. Issues one and two are overruled.

Accordingly, the trial court's judgment is affirmed.

Don H. Reavis<br>
Justice

Do not publish.